UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                  )
                                        )
    AHMET YILDIZ              )    Case No. 11-11246-BFK
                                        )    Chapter 13
        Debtor              )

## MEMORANDUM OPINION

This matter comes before the Court on the Court's Order to show cause why the Confirmation Order in this case should not be vacated. Docket No. 65. The case was filed on February 23, 2011. The Court confirmed the Debtor's Chapter 13 Plan on June 23, 2011. Docket No. 35. The confirmed Plan provided that the Debtor would "strip off" the second Deed of Trust lien of Bank of America, because the lien was wholly unsecured, pursuant to 11 U.S.C. § 506(a).[1] The Debtor filed an adversary proceeding against Bank of America in order to strip off the lien. Adv. Pro. No. 11-01382-BFK. The Debtor properly served the Bank, and when the Bank failed to respond, the Debtor moved for a default judgment.

At the default judgment hearing, the Court denied the Debtor's Motion because the Debtor's evidence showed that the lien was not, in fact, wholly unsecured. Specifically, the Debtor's Complaint alleged that the first Deed of Trust was in the amount of $423,347, Complaint ¶ 13, and the Debtor's appraisal indicated a fair market value of the property in the amount of $435,000. Complaint, Exh. A. Accordingly, the Court denied the Motion for default judgment. *See Peterson v. United BankShares, Inc. (In re Peterson),* 2011 WL 111154 (Bankr. E.D. Va. Jan. 13, 2011) (Debtor could not strip lien off where there was minimal equity for the

---

[1] The Plan actually included this provision in Section 7, which relates to lien avoidance under Section 522(f) of the Code. The Bank of America lien cannot be avoided pursuant Section 522(f) because it was a voluntary transfer of the Debtor's interest in the property. The Court reads the Plan to seek a strip off the Bank's lien pursuant to Bankruptcy Code Sections 1322 and 506(a).

1

junior lien). The Court further issued an Order in this bankruptcy case to determine whether the Order confirming the Debtor's Chapter 13 Plan should not be vacated. Docket No. 65.

Initially, the Debtor took the position that the value to be ascribed to the property should be the liquidation value – i.e., that the Court should deduct the hypothetical cost of a sale of the property, estimated to be between 6% and 8% of the proceeds. Using this standard, the Debtor argued, the value of the property would be less than the amount of the first lien. When the Court expressed its skepticism of this approach, noting that Section 506(a) of the Code requires that a valuation be made in light of the intended use of the property, and that here the Debtor was not proposing to sell the property, the Debtor modified his position slightly. The Debtor now asserts not that the liquidation value is the proper value, but that the Court should use the "cost" approach, stated to be $420,000 in the Debtor's appraisal. The Court, too, rejects this approach as not being the proper standard of valuation under Section 506(a) for residential property where the Debtor proposes to retain the property.

Section 506(a) of the Code provides in part as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such* property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1) (emphasis added).

Clearly, the Debtor's initial position, in favor of a liquidation value, was inconsistent with the Supreme Court case of *Associates Commercial Corporation v. Rash*, 520 U.S. 953 (1997). In *Rash*, the Supreme Court rejected the use of a liquidation value for a cramdown of the creditor's

interest under Section 1325(a)(5)(B) of the Code.  The Court rejected the very argument made initially by the Debtor in this case, that the collateral should be valued from the creditor's perspective, i.e., what the creditor could get if it took back the collateral and sold it at a foreclosure sale.  Rather, the Court adopted a "replacement value" standard for cramdown under Section 1325(a)(5).  Importantly, the Court explained: "by replacement value, we mean the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition."  *Rash*, 520 U.S. at 959 n.2.[2]

Since *Rash* was decided, Courts have been uniform in applying market value to residential real property where the Debtor proposes to retain the property.  *See Clay v. CSB Bank (In re Clay)*, 2011 WL 5922428 (Bankr. E.D. Mich. Nov. 21, 2011); *In re Plourde*, 402 B.R. 488 (Bankr. D.N.H. 2009); *Profitt v. Mendoza,* 2004 WL 3223059 (S.D. Ind. Nov. 23, 2004) (rejecting Debtor's argument for liquidation value in a strip off case); *In re Dziendziel,* 295 B.R. 184 (Bankr. W.D.N.Y. 2003).

Just as clearly, the Debtor's appeal to the "cost" approach is inconsistent with the replacement value standard of *Rash* for residential property.  Here, the Debtor argues that the collateral should be valued from the perspective of the Debtor.  If the cost to the Debtor of replacing the property, in this case, going out and buying a building lot and building the same house, is less than the fair market value, the argument goes, what debtor in his right mind wouldn't take advantage of that option?  Debtor's counsel cited two cases in support of this position: *150 North Street Associates, L.P. v. City of Pittsfield (In re 150 N. St. Assocs. Ltd. Partnership)*, 184 B.R. 1 (Bankr. D. Mass. 1995), and *Barrow v. Certified Developers and Management Co. (In re Barrow)*, 95 B.R. 502 (Bankr. N.D. Ohio 1989).  First, both cases

---

[2]  Section 506(a)(2) of the Code now essentially adopts the *Rash* replacement value standard as to personal property.

3

preceded the *Rash* decision by a number of years. Moreover, each of the cases actually adopts the standard of fair market value, not the cost approach advanced by the Debtor in this case.

The *150 North Street Associates* case was not a Chapter 13 case, of course, in that it involved a limited partnership, not an individual. *See* 11 U.S.C. § 109(e) (only an individual with regular income may file a petition under Chapter 13). Further, the Court noted that there are three methods of valuing real estate – the cost approach, the comparable sales approach, and the income approach. *150 North Street Associates, L.P.*, 184 B.R. at 6. The Court specifically rejected the cost approach, holding: "[b]ecause the cost approach rarely provides an accurate reading of the fair market value of real estate, appraisals routinely disregard it or mention it only in passing, and concentrate their efforts on the sales comparison and income approaches and then adjust for any differences between the two." *Id.*

Similarly, in *Barrow*, the Court held that: "[t]he replacement cost of a structure rarely is correlative to the fair market value." *In re Barrow*, 95 B.R. at 504. In short, both of the cases on which the Debtor relies rejected reliance on the cost approach.

Finally, the Supreme Court in *Rash* left it to the bankruptcy courts, as the triers of fact, to identify the best way of ascertaining replacement value. *Rash,* 520 U.S. at 965, n.6. In this case, the Debtor's appraisal states, with respect to the cost approach:

> Sales comparison method gives the best indication of final valuation. Lack of meaningful data renders the cost and income approach inappropriate.
>
> Adv. Pro. No. 11-1382, Complaint Exh. A, Appraisal, p. 4.

Where, as here (and in virtually all residential real estate appraisals), the Debtor's own appraiser relies on the comparable sales method, and acknowledges that the cost approach is "inappropriate," the Court as the trier of fact will reject any reliance on the cost approach to a

4

valuation of the collateral. In sum, the Debtor's reliance on the cost approach is unsupportable. The idea of the Debtor going out and building a similar home on another lot (the cost approach) is no more grounded in reality than that of the creditor taking back the property and liquidating the property at a foreclosure auction (liquidation value). Section 506(a) requires that a valuation be made in light of the intended use of the property. Where the Debtor intends to retain, and not sell, the property, the appropriate method to determine the fair market value is the comparable sales method.

## Conclusion

For the foregoing reasons, the Court will enter a separate Order vacating the Order confirming the Debtor's Plan, and giving the Debtor 21 days to file an Amended Chapter 13 Plan.

Date: _____     _____
                                Brian F. Kenney
                                United States Bankruptcy Judge

Copies to:

Ahmet Yildiz
1931 Storm Drive
Falls Church, VA 22043
Debtor

Jeffrey M. Sherman, Esquire
Lerch, Early & Brewer
3 Bethesda Metro Center
Suite 460
Bethesda, MD 20814
Counsel for the Debtor

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 Trustee